Bentley, J.
In the switching of cars near Air Line Junction, while Mr. Gagen was in the employ of the L. S. & M. S. R’y Co., as helper in the yard, in April, 1892, he received injuries whereby he lost three lingers of his hand, and upon the trial of the case in the court of common pleas he recovered a verdict of $2,500, for which judgment was rendered against the company. The company had the evidence preserved by bill of exceptions, and presents it here to sustain its petition in error, the company claiming that the verdict is not sustained by sufficient evidence. I will not recite in detail the circumstances as shown by the testimony, but simply attempt to present the controversy between the plaintiff in error and the defendant in error. This injury occurred in the night. There are, at the place in question, several railway tracks of this company, running, substantially, east and west. The most southerly track in question was what is called the south *696 bound main track; next to that and substantially parallel with it was a side track called No. 1'; parallel with that and north of it was No. 2, and then followed No. 8 and No. 4, in order. There was a leading track at the westerly end of these side tracks, connecting with the main track, and these tracks were so arranged and connected that cars could be shifted from the main track upon these various side tracks, and agaiix from these side tracks to the main track, or they could be shifted from one side track to another by using this leading track at the westerly end of the side tracks.
> On the night in question, a train of several freight cars was there, and an engine, in charge of a conductor, Mr, Holtz, ancl he, with these helpers and the engineer in charge of the engine, was shifting freight cars upon these various tracks. That is, for the most part, he was takiixg cars from the train, and setting some of them in on the south bound main track, and some of them on No. 1, axid some of them on track No. 8, and some on track No. 4.
The mode of doing it was this: The engine would back the cars,and some one would call a slack,so that a pin could be drawn; the conductor would draw the pin and disconnect certain cars from the train at the rear eixd of the train, and then the exigine xvonld be given amotion backwards after the piix was thus drawn, and when a certain speed had been reached, the engine, with all the cars still attched to it, would stop, and the cars which had been detached were allowed to run on and were switched to the proper track. This was called “cutting cars.” It was the duty of the conductor, as I have said, to pull the piix and to determine what cars should be cut off, and then when he was about to make the cut and send those cars back, he would call out aloud in the hearing of the switch tenders, and also in the hearing of his helpers and switchmen what track they should be let down upon; if upon the main track, he would call out aloud, “main track.” Then the person in charge of the switch would make the proper disposition of the switch,and let the cars run in on the south bo.aid main track, and the helper, who was to attend to that, would either mount them and ride them down and apply the brakes and stop them at the proper place, and then get down and couple them on to the cars already on that track, or, if he did not mount these cars and ride them down, he would walk down and attend to the coupling of these cars to other cars already on the track.
There were two helpers on this occasion; one was the plaintiff below, Mr. Gagen, who was attending more partió *697 ularly to the cars that should be thus set in upon the south bound main track, or upon the track next to it, side track No. 1. Another helper was performing the duty for the most part upon tracks No. 3 and No. 4. It was practically the duty of the conductor, it would seem from some of the testimony, just before he made the cut, to look out and see-where the helper was who was to attend to that particular cut, so that he would know he was in position to take care ob it.
At one time a part of these cars were cut down upon the south bound main track, the most southerly track I have mentioned. Mr. Gager was to take care of that, and he did. not follow it down, and having his lantern, he went up near enough to see or notice that there was no link in that moving car, where the link ought tobe; therefore, he could not couple it to the car which it was approaching. He says that thereupon he immediately went to the pile of links, a point he knew of, which was just across the track, track No. 1,about eight or ten feet from the place where he was to make this coupling, got a link and took it in his right hand and prepared to put it in its proper place. In order to follow the chronological order, I should have said that when he noticed that this link wras not in the draw bar, he simply let the cars go together;, then they bounded back about eighteen inches and stood there, as he says. It was while that space was open and-immediately afer the cars came to a rest, that he went for the link. He says he only had to go the distance I have mentioned to get the link, and that he immediately came back with it in his right hand,and proceeded to put it in its proper place, while he ivas thus engaged and just as he had. got the link entered, and before he had made the coupling and set the pin, another car struck this car which he had followed dowm, a car that had been cut from the train and sent down upon it, making what is called a “double cut,” and that car striking against the car into which he was inserting the link, drove that car against the originally stationary car which he was coupling it to, and he being unprepared for it, caught his hand between the draw bars and his fingers were cut off by the collision.
He charges that the sending of this last car down so that it would strike this car when he ivas in that position was negligence on the part of the conductor, his superior in the service. There is no question that he lost his fingers while he was in between those cars, either coupling them, or putting in the link.
*698 There is no question in the case that the conductor let a car down upon the south bound main track against this car and caused the collision which caused the injury. But the issue of fact that is made in the case is this: The conductor says that he first sent this car down and Mi\Gagen was to attend to it, but for some reason, the conductor does not know whether it was for lack of a link, or what, but for some reason, Gagen failed to make that connection at that time and gave it up; that it was usual for helpers when, for any reason they failed to make the coupling, when the cars ran down in that way, to let it go and afterwards to have the engine hitched to the car and then make the coupling, but to let it go for the time being and attend to the other cuts as they should be made from time to time. The 'conductor says that Mr. Gagen having failed to make the coupling at that time on the south bound main track, and having given jt up, a cut was made upon track No. 1 next to it, and that he saw Mr. Gagen going down to attend to this coupling to be made on track No. 1. He says that he saw him go behind a box car that was going down track No. 1, with his lantern, in order to attend to it, and so supposing that he was upon track No. 1 attending to that cut, and before he had seen him emerge from back of the box car at all, he made this other cut and sent another car down upon this south bound main track, which, in fact, did the mischief.
Now, it is claimed that instead of the plaintiff being injured as he says he was, by reason of a double cut, that is, one cut upon the south bound main track, then another cut upon the same track, in fact, the two cuts upon the south bound main track did not follow each other successively; but that there was a cut upon No. 1, intermediate, and that probably Mr. Gagen was injured by his leaving the coupling on track No. 1, which he ought to have been attending to, and his having for some reason or other gone back to the south bound main track to effect a coupling there of this first car to the cars that stood upon the south bound main track.
The other helper testifies in the case, and he says that the last two cuts that were made were sent down by the conductor upon the same track. He gave a deposition formerly, in which he stated that these two cuts were upon track No. 1 —he supposed it was track No. 1, upon which Mr. Gagen \yas injured. He now says that he cannot tell whether it was upon track No. 1, or the south bound main track, but it was one or the other, and whichever one it was, the two cuts were upon the same track.
*699 Now, with this aspect of the testimony, the case was given to the jury. If, as the plaintiff below testifies, and as is indicated by Mr. Igraham, the other helper, there was a double cut; that is, if a car was sent down upon the main track while the man was there attending to that coupling, and the conductor sent another one right down upon the same track and drove the cars together and injured him, unquestionably that would have been negligence on the part of the conductor, and the company would be liable for it. The conductor, as I say, denies that, and says that there was an intervening cut upon the other track,and he supposed the man was off on the other track, as he had reason to believe that he was on track No. 1, where he ought to have been, and that therefore it was not negligence, and the company not responsible. Thus the facts which, it is claimed, determine the question of the liability of the company were in dispute, but the testimony before the jury was such that it might have determined that the plaintiff was right in his testimony as to the facts, and if he was, there was negligence beyond a question. If he was not. and the facts were as the conductor testified, there would be more of a quesiton, but even then a chance for argument. It may not be perfectly clear even under the circumstances detailed by the conductor, that he had performed his full duty with care, considering his act of switching a car when he did not know his helper was — switching one car before the helper that he had expected to attend to it had come out from the other cut.
It seems very clear, with the conflict of testimony, that our duty is to affirm the judgment, and we think that the jury were warranted in finding as they did, and having found for the plaintiff, we are to suppose that .they may have found the facts to be as the plaintiff claims they were, corroborated as he was, to some extent, by the other helper, althoug his testimony may have been somewhat impaired by the statement he had made in a former deposition regarding these various cuts. Something has been said regarding the amount of the verdict of $2,500 — that it was too large — that the court ought to have set it aside on the ground of its excessive character; but we do not see our way clear to do this, and the judgment will be affirmed.